ROBERTA. CHAISSON, Judge.
^Defendant, Glenetraveronesse Cooks, appeals her convictions for possession with intent to distribute marijuana and possession of a firearm while in possession of a controlled dangerous substance. For the reasons that follow, we affirm defendant’s conviction for possession with intent to distribute marijuana but vacate her conviction and sentence for possession of a firearm while in possession of a controlled dangerous substance.

STATEMENT OF THE CASE

On January 11, 2007, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, in count one, with possession with intent to distribute marijuana, in violation of LSA-R.S. 40:966(A)(1), and in count two, with possession of a firearm while in possession of a controlled dangerous substance, in violation of LSA-R.S. 14:95(E).[1] At her March 19, 2007 [.¡arraignment, defendant pled not guilty. Defendant thereafter filed several pre-trial motions, including motions to suppress the statement and the evidence, which were heard and denied by the trial court.
The matter proceeded to trial before a twelve-person jury. After considering the evidence presented, the jury, on May 26, 2011, found defendant guilty as charged. On September 19, 2011, the trial court sentenced defendant, on count one, to eight years imprisonment in the Department of Corrections, suspended three of the eight years, and placed defendant on *1261 probation for three years. In addition, the trial court imposed an eight thousand dollar fine. With regard to count two, the trial court sentenced defendant to five years imprisonment without benefit of parole, probation, or suspension of sentence and imposed a fine of one thousand dollars.[2] The trial court ordered these sentences to run concurrently. Defendant now appeals.

FACTS

Shortly after midnight on September 11, 2006, Sergeant Victor Sehilleci of the Louisiana State Police, was traveling east down Interstate 10 towards U.S. 51 when he encountered a 2006 Dodge Stratus in the left lane traveling at a slow rate of speed, approximately forty-five miles per hour, and impeding the flow of traffic. Sergeant Sehilleci observed the vehicle weave and cross the fog line by about six inches on several occasions. Believing the driver to be either intoxicated or fatigued, Sergeant Sehilleci conducted a traffic stop to assess the condition of the driver.
Upon stopping the vehicle, Sergeant Sehilleci asked the driver, Kewana Drew-ery, to exit the vehicle and to produce her driver’s license and the vehicle registration. As she handed the officer her driver’s license, he noticed that her |4hand was shaking and that she appeared to be nervous. Drewery was unable to produce the vehicle registration, but rather provided the officer with a rental agreement for the vehicle. Upon reviewing the rental agreement, Sergeant Sehilleci noted that the vehicle had been rented on September 10, 2006, at approximately 1:45 p.m., that a third party who was not present at the scene was named as the renter on the agreement, and that Drewery was not listed as an authorized driver. Sergeant Sehilleci further learned that the renter of the vehicle was Jacques Rivers and that Drewery’s trip was a “quick and short turn-around trip” based on the time and date referenced in the rental agreement. When Sergeant Sehilleci then inquired into the nature of their trip, Drewery advised him that they had come from Houston, Texas, where they had been checking on her apartment.
Based on the information gained from the rental agreement as well as his conversation with Drewery, Sergeant Sehilleci decided to speak to defendant, the passenger in the vehicle. When Sergeant Sehille-ci approached the passenger side of the vehicle, defendant was speaking to an unidentified male on the phone. Sergeant Sehilleci asked her to hang up the phone and then proceeded to ask defendant about their trip. Defendant told him that they had been in Baytown, Texas, visiting family. During his conversation with defendant, Sergeant Sehilleci began to “detect the overwhelming odor of green marijuana coming from within the vehicle.” Sergeant Sehilleci then asked defendant if there were any weapons in the vehicle, and she advised him that there was a handgun underneath her seat, which the officer secured for safety purposes.[3] Additionally, upon illuminating the interior of the vehicle with his flashlight, Sergeant Sehilleci noticed an odor neutralizer, four cell phones, and three juveniles sitting in the back seat. After ^securing the weapon in his vehicle, Sergeant Sehilleci spoke to Drewery who again told him that they had gone to her apartment in Houston and did *1262 not visit family members. Sergeant Schil-leci then advised Drewery of her Miranda[4] rights and asked her whether there was anything illegal inside the vehicle and whether there was any luggage inside the trunk. According to Sergeant Schilleci, Drewery advised him that there was nothing illegal inside the vehicle and that she had a bag inside the trunk.
Pursuant to the officer’s request, Drew-ery gave her verbal consent to search the vehicle. Upon opening the trunk, Sergeant Schilleci observed “two separate black garbage bags” which contained bales of marijuana. According to the officer, “one of the green bricks had fallen out” and was visible. Further, there were two Ziploc bags containing marijuana, one of which had opened and spilled marijuana inside the trunk.[5]
Sergeant Schilleci then placed defendant and Drewery under arrest and transported them to the St. John the Baptist Parish lockup. While being taken into custody, Sergeant Schilleci heard defendant and Drewery make statements to each other to the effect of “we’re not going to take this charge for him, this is going to be his charge.” Once at the lockup, Sergeant Len Marie of the Louisiana State Police took possession of the evidence, advised defendant and Drewery of their rights, and conducted a brief interview with them. Before interviewing the two women, Sergeant Marie also heard them say, “I’m not taking this charge, I’m not taking his charge.” Both defendant and Drewery denied possession and knowledge of the marijuana. They advised Sergeant Marie that they knew Jacques Rivers, who was listed on the vehicle rental agreement, and further told him about the Lblack truck belonging to Jacques Rivers that was traveling with them. In addition, defendant and Drewery provided Sergeant Marie with a potential address where the black truck could be located.
Sergeant Marie traveled to the address provided by defendant and Drewery, which was an apartment complex near Lapalco Boulevard, in an attempt to locate the black truck. At that time, Sergeant Marie did not see a black truck; however, he returned later in the day and observed a black truck in the parking lot. Sergeant Marie then went to speak to the apartment complex manager who advised him that Jacques Rivers was not renting an apartment at the complex. Sergeant Marie went back to the parking lot to wait by the truck, but it was gone. Sergeant Marie subsequently called Rivers, using the phone number listed on the vehicle rental agreement. Sergeant Marie asked Rivers to come in for an interview, but Rivers refused and hung up the phone. Sergeant Marie was unable to contact Rivers again.
At trial, both defendant and Drewery testified as to the events that occurred on their trip. On September 11, 2006, Drew-ery called defendant and asked her to accompany her to Houston to check on her apartment. Defendant agreed, and Drew-ery picked her up at about 9:30 a.m., in a black Nissan Titan truck owned by Jacques Rivers, a high school acquaintance.[6] On their way to Houston, they decided to stop in Baytown, Texas, to visit *1263 defendant’s daughter’s grandmother. While in Baytown, Drewery received a phone call advising her that she had to report to work the next morning at six o’clock. As a result of this phone call, the two women stayed in Baytown for a few hours and then had to return to New Orleans instead of continuing on to Houston. While still in Baytown, Rivers, who [7was apparently also there, called Drew-ery and offered to fill up the truck with gas.[7] When they met at the gas station, Rivers told them that he wanted to drive his truck back home and that they could drive the rental car that he had. At that point, they switched vehicles. According to defendant and Drewery, neither of them ever went into the trunk of the vehicle. Rather, Rivers put Drewery’s bag in the trunk for her.
During her testimony, defendant admitted to owning and possessing the gun, explaining that she had obtained it after Hurricane Katrina for protection; however, she denied any knowledge of the marijuana. Drewery also denied any knowledge of the marijuana and further denied that there was a pungent odor of marijuana inside the car.

SUFFICIENCY OF THE EVIDENCE

On appeal, defendant challenges the sufficiency of the evidence used to convict her of both offenses. With regard to the offense of possession with intent to distribute marijuana, defendant argues that the State failed to prove that she had dominion and control of the marijuana. She maintains that as a passenger in the vehicle rented by a third party, she had no knowledge of the contraband contained in the trunk of the car, and further that her mere presence in the vehicle was insufficient to prove constructive possession.
With regard to the offense of possession of a firearm while in possession of a controlled dangerous substance, defendant raises two arguments. She first asserts that the evidence was insufficient to sustain this conviction because the State failed to establish a nexus between the firearm located in the interior of the vehicle and the marijuana located in the trunk. Next, defendant argues that the verdict of guilty to possession of a firearm while in possession of a controlled dangerous substance | ^violated the prohibition against double jeopardy. Because we find merit to defendant’s double jeopardy argument, we will address that issue first.
The Double Jeopardy Clause of the United States Constitution and the Louisiana Constitution protects defendants from being punished or prosecuted twice for the same offense. United States Constitution, Amendment 5; Louisiana Constitution of 1974, Art. 1, § 15; see also LSA-C.Cr.P. art. 596. The Double Jeopardy Clause clearly “prevents an offender from being convicted of both the underlying offense for a 14:95(E) violation and the 14:95(E) violation itself.” State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1329. In State v. Thomas, 99-2219 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104, writ denied, 00-1734 (La.6/22/01), 794 So.2d 780, the appellate court concluded that the defendant’s prosecution for both possession of cocaine with intent to distribute, pursuant to LSA-R.S. 40:967(0, and possession of a firearm while in possession of the same cocaine, pursuant to LSA-R.S. 14:95(E), violated the defendant’s double jeopardy rights. See also State v. Warner, *1264 94-2649 (La.App. 4 Cir. 3/16/95), 653 So.2d 57, writ denied, 95-0943 (La.5/19/95), 654 So.2d 1089; and State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95), 654 So.2d 809, writ denied, 95-1252 (La.6/30/95), 657 So.2d 1035.
In the instant case, defendant was convicted of possession with intent to distribute marijuana, LSA-R.S. 40:966(A)(1), and possession of a firearm while in possession of that same marijuana, LSA-R.S. 14:95(E). Under the “same evidence” test, if evidence required to support a finding of guilt of one crime also supports a conviction for another offense, the defendant can be placed in jeopardy for only one of the two. State in Interest of S.L., 11-883 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 829. Employing this test, we find that the prohibition against double jeopardy was violated in this case. In particular, we find that the prosecution for ^possession of a firearm while in possession of marijuana required use of the same evidence presented against defendant under LSA-R.S. 40:966(A). In order to convict defendant of the weapons charge, the State was required to prove possession of a controlled dangerous substance. The one distinct act defendant committed, the possession of marijuana, was the determinative factor in a successful prosecution of either offense. Without the possession of marijuana, either charge would have failed. See State v. Sims, 44,123 (La.App. 2 Cir. 4/15/09), 7 So.3d 1288.
Where multiple punishments have been erroneously imposed in violation of double jeopardy, the proper appellate procedure is to eliminate the effect of the less severely punishable offense. State v. Garcia, 10-755 (La.App. 5 Cir. 5/10/11), 66 So.3d 24, 28. The less severely punishable offense in this case is possession of a firearm while in possession of a controlled dangerous substance, which carries a potential sentence of five to ten years, whereas possession with intent to distribute marijuana has a sentencing range of five to thirty years. See LSA-R.S. 14:95(E), 40:966(B)(3). Accordingly, we vacate defendant’s conviction and sentence for possession of a firearm while in possession of a controlled dangerous substance.
We now turn our attention to the issue of whether the evidence was sufficient to sustain defendant’s conviction of possession with intent to distribute marijuana. In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Sosa, 05-213 (La.1/19/06), 921 So.2d 94, 99. The rule as to circumstantial evidence is that, “assuming every fact to be proved |1nthat the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S.15:438. The reviewing court does not determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether “the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.” State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83; State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 19, writ denied, 11-282 (La.6/17/11), 63 So.3d 1039.
In the instant case, defendant challenges the evidence relating to her conviction for possession of marijuana with *1265 intent to distribute, in violation of LSA-R.S. 40:966(A)(1). The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he or she did so with the specific intent to distribute it. State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 442, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213. When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the State must prove the amount of the substance and/or manner in which it was carried was inconsistent with personal use. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant’s possession which gives rise to reasonable inferences of intent to distribute. State v. Robbins, 43,129 (La.App. 2 Cir. 3/19/08), 979 So.2d 630, 638.
The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. State v. Proctor, 04-1114 (La.App. 5 Cir. 3/29/05), 901 So.2d 477, 482. A person may be in constructive possession of a drug even though it is not in his physical custody, if | nit is subject to his dominion and control. A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 885. Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Marshall, 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881, 887, writ denied, 03-909 (La.9/26/03), 854 So.2d 345.
The mere presence of the defendant in the area where a controlled dangerous substance is found does not constitute constructive possession. However, proximity to the drug may establish a pri-ma facie case of possession when colored by other evidence. State v. Bazley, 60 So.3d at 20. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) the defendant’s knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant’s access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users. State v. Proctor, 901 So.2d at 482.
In State v. Morgan, 557 So.2d 977 (La.App. 4 Cir.1990), writ denied, 564 So.2d 317 (La.1990), the appellate court held that the evidence was sufficient to show constructive possession by the defendant of contraband found in the trunk of the vehicle in which he was a passenger. In concluding that the defendant exercised dominion and control over the illegal substances, the court considered that the defendant had permission to use the vehicle where the contraband was found; the defendant and the owner of the vehicle had a personal relationship; the 112defendant was wearing a beeper and had an address book indicating that he may be involved in drug trafficking; and the defendant was observed stuffing objects under the front seat of the vehicle which were later identified as a small handgun and a small quantity of narcotics.
In State v. Odie, 02-226 (La.App. 3 Cir. 11/13/02), 834 So.2d 483, writ denied, 03-625 (La.6/20/03), 847 So.2d 1219, the appellate court found that the evidence was sufficient to establish that the passenger of the vehicle had constructive possession of *1266 the- cocaine found, in the gas tank. In making this determination, the court noted that the defendant was acting abnormally, gave 'information to the police that was inconsistent with that given by the driver, and was surrounded by a gasoline smell as well as an air freshener smell while in the vehicle. The court also considered that rags containing gasoline were found in the cargo area of the vehicle, the gas tank had recently been tampered with, and there were several cans of cocaine in the gas tank.
Likewise, in State v. Robbins, 979 So.2d at 638-639, the appellate court concluded that the evidence was sufficient to prove that the defendant driver had constructive possession of the marijuana found in the trunk of the car, even though the passenger testified at trial that the driver had no knowledge that he had purchased the marijuana and put it in the trunk. In finding constructive possession, the court noted that the trunk of the car was equally accessible by both occupants of the vehicle as they embarked on a trip from Texas to Florida. Further, the marijuana was not hidden in any manner to raise a strong inference that one party may have had the complete control over the drug to the exclusion of the other. The appellate court determined that the defendant’s guilty knowledge could be inferred from the fact that the passenger smelled of marijuana, establishing defendant’s Indirect involvement with the drug. Moreover, the court noted that the men both gave inconsistent details about their trip and their relationship to one another.
In the instant case, we likewise find that the evidence presented by the State was sufficient to show that defendant had constructive possession of the marijuana contained in the trunk of the vehicle in which she was a passenger. At trial, Sergeant Schilleci testified that he stopped the vehicle co-defendant Drewery was driving for traffic violations. After observing the subject vehicle weaving and crossing the fog line on-several occasions, Sergeant Schille-ci believed that Drewery may have been impaired. Upon stopping the vehicle, Sergeant Schilleci noticed that Drewery was very nervous, and that her hand was shaking when she handed him her license. Although typical to display some nervousness, Sergeant Schilleci testified Drewery displayed continued and excessive nervousness throughout the entire traffic stop. Drewery also provided Sergeant Schilleci with a rental agreement indicating that the vehicle had been rented by an absent third party which she was slow to identify. Further, when asked about their travel itinerary, Drewery told Sergeant Schilleci that they had made a quick trip to Houston, Texas, to check on her apartment. During his testimony, the officer stated that the quick trip, excessive nervousness, and rental vehicle obtained by an absent third party were all indicators that someone may be transporting contraband or driving a stolen vehicle.
Sergeant Schilleci then decided to speak with defendant, the front seat passenger of the vehicle. When asked the same questions as Drewery regarding their travel itinerary, their stories contradicted one another. Defendant told Sergeant Schilleci that they had been in Baytown, Texas, visiting family. During their conversation, defendant appeared excessively nervous and was breathing heavily. Additionally, Sergeant Schilleci detected an “overwhelming odor” of 114marijuana emanating from the vehicle. Defendant also turned over a firearm to Sergeant Schilleci when asked if there were any weapons in the vehicle. Moreover, the officer observed four cell phones, an odor neutralizer, and *1267 three juveniles in the vehicle.[8]
Sergeant Schilleci advised Drewery of her rights and asked if she would consent to a search of the vehicle. Pursuant to Brewery’s oral consent, Sergeant Schilleci opened the trunk of the vehicle and found the marijuana and a bag containing Brewery’s personal belongings. With regard to the odor of the marijuana, Sergeant Marie testified that when he checked the vehicle Brewery was driving for other evidence, he smelled an odor of marijuana in the vehicle. Sergeant Marie further testified that when he was transporting the seized evidence, the odor of marijuana was so strong that he had to roll down the windows of his police unit and “Febreze” his back seat.
Both defendant and Brewery testified at trial that they had no knowledge of the marijuana in the trunk and that it did not belong to them. Rather, they claimed the drugs belonged to Jacques Rivers, a high school acquaintance. Brewery explained that she had borrowed Rivers’ truck to drive to Houston to check on her apartment and had asked defendant to accompany her. They stopped in Baytown along the way to see family but had to turn around and come back before reaching Houston because Brewery was called into work. Before starting their trip back to New Orleans, both women testified that Rivers called and offered to fill up his truck with gas for their trip back. The women then met Rivers at a gas station where Rivers decided he wanted to drive his truck, so they exchanged cars. According to both defendant and Brewery, they never looked, or went into the trunk of the car. Rather, Rivers placed Brewery’s bag in the trunk for her. Both 11fiwomen testified that while following Rivers back to New Orleans, they never detected the odor of marijuana in the car.
In the present case, the jury obviously found the testimony of the State’s witnesses to be credible and rejected that of defendant and Brewery. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to evaluate the credibility of witnesses, nor to overturn the trial court on its factual determination of guilt. State v. Bazley, 60 So.3d at 21.
Based on the foregoing, we find that the evidence presented by the State was sufficient to establish defendant’s constructive possession of the marijuana contained in the trunk of the vehicle in which she was a passenger. In particular, defendant’s behavior when pulled over and questioned by police, the inconsistent stories concerning their itinerary, the short turn-around trip, the four cell phones, the rental vehicle leased to an absent third party, and the air freshener, tend to support the conclusion that defendant and Brewery had constructive possession over the contraband found in the trunk of the vehicle. Additionally, evidence of defendant’s guilty knowledge may be inferred by the women’s inconsistent stories and the strong odor of marijuana present in the vehicle, as testified to by both Sergeant Schilleci and Sergeant Marie. Lastly, we note that defendant’s intent to distribute can be inferred by the large amount of marijuana, which was inconsistent with personal use, found in the trunk of the vehicle. Accordingly, we find that the State sufficiently proved the elements of the offense of possession with intent to distribute marijuana beyond a reasonable doubt.

*1268
DENIAL OF MOTION TO SUPPRESS

On appeal, defendant also challenges the trial court’s denial of her motion to suppress evidence.
|1fiAt the motion to suppress hearing, Sergeant Schilleci testified that on September 11, 2006, around midnight, he was on patrol on 1-10 in St. John the Baptist Parish when he observed a vehicle traveling at approximately forty-five miles per hour in the left lane. The officer also noticed that the vehicle was weaving within the lane and crossing the left fog line.[9] Based on these traffic violations and his belief that the driver may be impaired or fatigued, Sergeant Schilleci initiated a traffic stop of the vehicle.
Pursuant to the officer’s request, the driver, co-defendant Drewery, exited the vehicle and handed Sergeant Schilleci her driver’s license. According to Sergeant Schilleci, Drewery was nervous, and her hands were shaking when she handed him the license. Drewery advised the officer that she had been traveling from Houston, Texas, and she was sleepy. Sergeant Schilleci had also requested the vehicle registration; however, Drewery was unable to produce a registration document, but rather handed the officer a rental agreement for the vehicle. Upon reviewing the rental agreement, Sergeant Schille-ci noted that Drewery was not listed as an authorized driver and that she had to look over the document before being able to provide him with the name of the third party who had rented the vehicle. According to the officer, Drewery continued to display excessive nervousness.
Due to his suspicion regarding the vehicle, Sergeant Schilleci decided to speak with defendant, the front seat passenger. As he walked up to the vehicle, Sergeant Schilleci noticed that defendant was talking on a cell phone. When defendant rolled her window down, Sergeant Schilleci heard a male voice on the phone and asked defendant to please get off the phone. Defendant told the officer that they were coming from Baytown, Texas, where they had visited family 117members. However, Drewery had previously advised the officer that they had gone to Houston to check on her apartment. Sergeant Schilleci also observed three more cell phones on the center console of the vehicle and three children sitting in the back seat. Further, Sergeant Schilleci detected the odor of raw marijuana emanating from the passenger side window as he was speaking with defendant.
At this point Sergeant Schilleci asked the passenger if there were any weapons in the vehicle, and defendant indicated that there was a handgun underneath her seat. The officer secured the weapon and then went to speak to the driver of the vehicle. Once again, Drewery told him that they had gone to Houston to check on her apartment. Based on his experience, Sergeant Schilleci knew that “there was something more to this then [sic] a simple traffic stop.” Sergeant Schilleci then called for assistance, advised Drewery of her rights, and asked her if there was anything illegal in the car. After Drewery replied in the negative, the officer asked for consent to search the vehicle. Drewery verbally gave her consent to search. Sergeant Schilleci then opened the trunk and observed four bundles, approximately forty pounds, of marijuana. The trunk also contained Ziploc bags with loose marijuana, one of which had partially opened and spilled into the trunk. Defendant and Drewery were then advised of their rights and placed under arrest. At the suppres *1269 sion hearing, Sergeant Schilleci testified that upon arresting the two women, he overheard them comment that “we’re not taking this charge for him.”
After considering the evidence presented at the hearing as well as the arguments of counsel, the trial court denied defendant’s motion to suppress. Defendant now challenges that denial. Defendant argues that after stopping the vehicle, Sergeant Schilleci detained her longer than was reasonably necessary to complete the investigation of the traffic violation and to issue a traffic citation. Defendant maintains that the unreasonable extension of the traffic stop amounted |1sto an illegal seizure as the officer had no particularized suspicion of criminal activity. Accordingly, defendant asserts that the illegal seizure vitiated the consent to search; therefore, the trial court erred in denying her motion to suppress. For the reasons that follow, we find no merit to defendant’s arguments.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. War-rantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. State v. Wolff, 09-508 (La.App. 5 Cir. 12/29/09), 30 So.3d 897, 901.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Bellow, 07-824 (La.App. 5 Cir. 3/11/08), 982 So.2d 826, 829.
The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Generally, the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred. The standard is purely objective and does not take into consideration the subjective beliefs or expectations of the detaining officer. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); State v. Waters, 00-356 (La.3/12/01), 780 So.2d 1053, 1056; State v. Wolff, 30 So.3d at 901. Further, an officer has the right to conduct a routine license and registration check. State v. Lopez, 00-562 (La.10/30/00), 772 So.2d 90, 93; State v. Preston, 04-269 (La.App. 5 Cir. 7/27/04), 880 So.2d 64, 67.
LSA-C.Cr.P. art. 215.1(D) provides that in conducting a traffic stop “an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.” If the police officer has a specific suspicion of criminal activity, he may further detain the individual or the property while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); State v. Lopez, 772 So.2d at 93; State v. Preston, 880 So.2d at 68. There is no bright line rule for when a detention lasts too long. Each instance must be *1270 assessed in view of the surrounding circumstances. State v. Stowe, 44,815 (La.App. 2 Cir. 10/28/09), 25 So.3d 945, 950-951.
After reviewing the record in this case, we find no abuse of discretion in the trial court’s ruling which denied defendant’s motion to suppress. Regarding the initial investigatory stop, the record clearly reflects that the subject vehicle was stopped for two traffic violations: impeding the flow of traffic, LSA-R.S. 32:64(B), and improper lane usage, LSA-R.S. 32:79. See State v. Neuman, 01-1066 (La.App. 5 Cir. 4/10/02), 817 So.2d 180, 183. Thus, without regard to Sergeant Schilleci’s subjective intent, the committed traffic infractions gave the officer an objective probable cause basis to stop the vehicle. State v. Wolff, 30 So.3d at 902.
Upon stopping the rental vehicle to conduct the traffic stop, Sergeant Schil-leci asked Drewery to step out of the vehicle to obtain her driver’s license and 12nthe vehicle registration. Sergeant Schil-leci noticed that Drewery was very nervous and that her hand was shaking as she gave him her license. Drewery also provided a rental agreement for the car which listed an unknown third party as the renter. While reviewing Drewery’s license and the rental documents, Sergeant Schil-leci engaged in conversation with Drewery and inquired about the nature of her trip. During this conversation, Drewery told the officer that they were driving back from Houston where they had been checking on her apartment. Sergeant Schilleci then spoke to defendant who informed him that they had been visiting family in Baytown, Texas. While conversing with defendant, Sergeant Schilleci noticed that defendant appeared nervous, had a worried look on her face, and was breathing heavily. Inside the vehicle Sergeant Schilleci also observed four cell phones, air freshener, and detected the “overwhelming” smell of raw marijuana. Sergeant Schilleci also learned that there was a handgun underneath defendant’s seat, which he seized and secured. We further note that the rental vehicle was stopped at 12:53 a.m. and that defendant and Drewery were arrested at approximately 1:04 a.m.
Given these circumstances, we find that the officer did not unreasonably extend the traffic stop. Moreover, the detention was justified by reasonable suspicion due to defendant’s nervous behavior, the conflicting statements made by defendant and Drewery, and the “overwhelming” odor of marijuana emanating from the vehicle while speaking -with defendant. Since the subsequent search of the vehicle conducted pursuant to Drewery’s consent was not preceded by an impermissible seizure, the consent to search, the search, and the seizure of the contraband were lawful and were not fruits of an unlawful detention of defendant. Accordingly, we find that the trial court did not abuse its discretion in denying defendant’s motion to suppress evidence.

\9,ERROR PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review reveals that the trial court failed to impose the requisite probation fee under LSA-C.Cr.P. art. 895.1(E), which provides, in pertinent part:
E. When the court places any defendant convicted of a violation of the controlled dangerous substances law, R.S. 40:966 through 1034, on any type of probation, it shall order as a condition of probation a fee of not less than fifty nor more than one hundred dollars, payable *1271 to the Louisiana Commission on Law Enforcement to be credited to the Drug Abuse Education and Treatment Fund and used for the purposes provided in R.S. 15:1224.
Here, defendant was convicted of LSA-R.S. 40:966 and placed on probation. Given that defendant was placed on probation, the trial court was required to order as a condition of probation a fee of not less than fifty nor more than one hundred dollars. Accordingly, we remand the matter with instructions to the trial court to impose the mandatory fee on defendant pursuant to LSA-C.Cr.P. art. 895.1(E).
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence for possession with intent to distribute marijuana but vacate her conviction and sentence for possession of a firearm while in possession of a controlled dangerous substance. We remand the matter to the trial court with instructions to impose the mandatory probationary fee pursuant to LSA-C.Cr.P. art. 895.1(E).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

. Co-defendant, Kewana Drewery, was charged in the same bill of information with the same two counts. Cooks and Drewery proceeded to trial together. Drewery has also appealed her convictions.

. The Pre-Sentence Investigation indicates that defendant was not eligible for Intensive Incarceration/Intensive Parole Supervision pursuant to LSA-R.S. 15:574.4.4 due to her conviction for the LSA-R.S. 14:95E firearm offense.

. The handgun was located inside a gun case.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At trial, Cheryl Blades, an expert in the field of chemical analysis of marijuana, testified that she analyzed the evidence seized in connection with this case. She testified that the gross weight of the evidence was approximately thirty-seven pounds and that it tested positive for marijuana.

.Drewery explained that Rivers knew her car was not working, and he let her borrow his truck to travel to Houston.

. No explanation was given regarding the reason for Rivers’ presence in Baytown. On cross-examination, Drewery testified that she did not know why Rivers was in Texas, and that she did not know he was going to be there until she received a phone call from him asking if she needed him to fill the truck up with gas.

. Schilleci noted that sometimes drug couriers will put juveniles in the vehicle in an attempt to "throw law enforcement off.”

. Sergeant Schilleci testified that a traffic citation was issued to Drewery for violating LSA-R.S. 32:64(B), impeding the flow of traffic, and LSA-R.S. 32:79, improper lane usage.