| STATE OF LOUISIANA | NO. 22-K-232 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| JEREMY SIMMONS | COURT OF APPEAL |
| | STATE OF LOUISIANA |

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-4700, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

July 06, 2022

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois

**<u>WRIT DENIED</u>**
   **FHW**
   **SMC**
   **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Susan S. Buchholz
First Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
Thomas J. Butler

COUNSEL FOR DEFENDANT/RELATOR,
JEREMY SIMMONS
C. Gary Wainwright

**WICKER, J.,**

Relator-defendant, Jeremy Simmons, seeks review of the trial court's April 4, 2022 denial of his motion to suppress evidence. For the following reasons, we deny the writ.

On September 10, 2020, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession with intent to distribute cocaine weighing 28 grams or greater in violation of La. R.S. 40:967(A) (count 1); possession with intent to distribute methamphetamine weighing 28 grams or greater in violation of La. R.S. 40:967(A) (count 2); possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count 3); possession with intent to distribute marijuana weighing less than 2.5 pounds in violation of La. R.S. 40:966(A) (count 5); possession of heroin weighing less than 2 grams in violation of La. R.S. 40:966(C) (count 6); possession of oxycodone weighing less than 2 grams in violation of La. R.S. 40:967(C) (count 7); and possession of buprenorphine in violation of La. R.S. 40:968(C) (count 8).[1] Defendant pled not guilty on September 11, 2020.

Following the filing of a motion to suppress, the trial court conducted hearings on November 21, 2021 and April 4, 2022. At the November 21, 2021 suppression hearing, Trooper Katherine Stegall testified that on the date of defendant's arrest, August 3, 2020, she was employed as a patrol officer with the Louisiana State Police. She was stopped on I-10 East in Jefferson Parish between the Clearview Pkwy. and Causeway Blvd. interstate exits "running radar" when she noticed a vehicle approaching at a high rate of speed. She testified that her radar reflected that the vehicle was traveling 93 miles-per-hour in a 60 miles-per-hour speed zone. She initiated a traffic stop. The body camera video recording of the entire stop was admitted into evidence at the suppression hearing and viewed by the trial judge.

The recording reflects that Trooper Stegall instructed defendant to exit the vehicle and walk to the back of his vehicle. Trooper Stegall exited her police unit and approached defendant. She informed defendant of the reason for the traffic stop, speeding, to which defendant appeared to agree and indicated that he was in a hurry to get home. Trooper Stegall then engaged in conversation with defendant about where "home" is, where he was coming from, and who was traveling with him. When asked about his travel plans, defendant stated that he was traveling from "over there," pointing to the westbound interstate. He then told Trooper Stegall that he was traveling home from Baton Rouge, just "riding" around with friends. Trooper Stegall asked for defendant's driver's license, and he handed her a Louisiana State ID and told her that he had the LA Wallet app on his phone, which was not on his person. Trooper Stegall returned to her police unit to run defendant's name and determined that there were "no wants or active warrants" for defendant.

After verifying defendant's identity, Trooper Stegall engaged in conversation with defendant about the vehicle that he was driving, which was a rental car. When questioned, defendant stated that the car was rented in his aunt's name and that he had the car for "like a day" but could not recall what day it was or exactly when he took possession of the vehicle. Trooper Stegall testified that defendant's demeanor was "nervous and abnormal." She testified that, because of

---

[1] The bill of information also charged co-defendants, Robert Garrett and Tamike Dauphine, with various crimes.

the other two occupants in the vehicle and the fact that she was stopped on the side of the interstate at nearly 2:00 a.m., she decided to detain defendant for her safety. At that point, unprompted, defendant changed his story concerning his travel plans and told Trooper Stegall that he was actually traveling home from Texas. Trooper Stegall testified that defendant's responses and statements concerning his travel plans were inconsistent and vague and that she suspected criminal activity. Trooper Stegall advised defendant of his *Miranda* rights, but continued to advise him that he was not under arrest at that time.

Shortly thereafter, within three minutes, another officer arrived at the scene. Trooper Stegall testified that the officers asked the other two occupants of defendant's vehicle to exit the vehicle and, upon making contact with the passenger in the back seat of the car, she smelled the odor of fresh marijuana. Trooper Stegall detained the female passenger and advised her of her *Miranda* rights. The female passenger told Trooper Stegall that they had left New Orleans on Friday and were traveling home from visiting her child's father in prison in Franklin Parish, Louisiana, but explained that they drove through Jackson, Mississippi to get there. Upon conferring with her fellow officer, Sergeant Zimmerman, concerning the inconsistent statements and, after advising defendant that she "smelled weed" in the vehicle, Trooper Stegall elected to search the vehicle.

Concerning the evidence recovered pursuant to the search, Trooper Stegall testified as follows:

> [We recovered] [t]hree clear plastic vacuum sealed bags containing a compressed white powder believed to be cocaine was approximately two point nine three pounds.
>
> *        *        *
>
> The next items found were a peach backpack in the rear cargo area claimed by Miss Dalphine. That backpack contained RAW, that's the brand name, rolling papers. One clear plastic bag containing approximately one hundred multicolored tablets believed to be MDMA and/or ecstasy. One black and silver scale. One pistol light attachment.
>
> Next was a black backpack with a red zipper in the third seat of the van. That backpack contained one loaded black Glock 22 Generation Four pistol. It's a 40 caliber with the serial number of BKRW045. Two 40 caliber magazines with live rounds. One black leather trifold wallet which contained twenty-three sealed Suboxone sublingual strips.
>
> *        *        *
>
> Next located was a black and blue cinch top backpack also in the third seat. That backpack contained plastic Raising Cane's cup with red top containing one clear plastic bag containing a brown powder, which we believe to be heroin. One clear plastic bag containing a white powder believed to be cocaine. A clear plastic bag containing a gray powder of an unknown substance. The brown bags were determined to weigh a total of approximately point four grams. One Marriott key, Marriott Hotel key. One black scale.

2

Next located was a navy Lacoste backpack also in the third seat. That backpack contained one white plastic quarter baggie containing a green leafy substance believed to be marijuana, which weighed approximately point five grams. One white and pink Android cell phone. Keys with a silver twist top key chain cylinder containing about twelve multi-colored tablets believed to be MDMA and/or ecstasy. I have it noted that is a common appearance with the tablets located in the peach backpack. Also located in that backpack was a Blunt Air Freshener spray bottle full of liquid. Cash separated and wrapped in rubber bands containing multiple denominations in unknown amount.

Next located was a black and gray checkered cinch style backpack also in the third row. Inside that backpack was one plastic vacuum sealed styled bag containing a green leafy substance weighing a total of approximately fifteen grams. Three loose ammunition, 38 caliber. One brown Mason jar containing approximately twenty grams of a green leafy substance believed to be marijuana. Medical paperwork with the name Jeremy Simmons listed as the patient. A box of American Gunner Hornady 40 cal -- excuse me 40 caliber ammunition with four live rounds inside. A box of Remington 9 millimeter ammunition with fifty live rounds inside. A prescription bottle for Tramadol with the patient name scratched off of the label.

Next located in the center console under the cup holder, one clear plastic bag containing several small plastic bags. A One-A-Day bottle containing approximately six hundred multicolored tablets believed to be MDMA and/or ecstasy, some of which were loose in the bottle and some in a clear plastic bag. The tablets are common in appearance with the tablets found in the peach backpack, as well as the key chain cylinder in the Lacoste backpack. One clear plastic bag containing a green leafy substance believed to be marijuana, determined to weigh approximately point five grams.

Next located in the drawer on the back side of the second seat of the center console, a clear Mason jar containing approximately ten grams of a green leafy substance believed to be marijuana. A grocery style back excuse me. A grocery style bag containing four packs of [] Easy Touch Syringes. One black scale. A brown paper bag with two bottles of Supreme Inositol E6H1206 powder substance which is known to be a cutting agent.

On the floorboard under the front passenger seat, one loaded black Smith & Wesson 40 caliber handgun semiautomatic with the serial number –I'm sorry, the model number is SW990L, and the serial number is SAJ9464 with one magazine containing live rounds. That weapon was determined to be stolen.

In the rear cargo area, one red Puma shoe box containing Hornady 9 millimeter ammunition, box containing four live rounds. One clear plastic bag containing white -- one white oblong tablet with the inscription M523 10/325 identified as oxycodone. One clear plastic bag containing a brown powder substance believed to be heroin and weighing approximately point two grams. One white plastic

containing one black extended magazine. A total of six cell phones were located during the search and separated as follows. Jeremy Simmons was determined to have two black iPhones. Tameka Dalphine, one red iPhone and one pink and white Android phone. Robert Garrett, Jr., one small iPhone in an orange and black case and one large iPhone in a black case.

On April 4, 2022, the trial court continued addressing the suppression issue. After considering the testimony and the video evidence admitted, the trial judge denied the motion to suppress in open court. This timely writ application followed.

In his writ application to this Court, defendant first challenges the traffic stop, asserting that the record contains no evidence that defendant was in fact speeding. Defendant was never issued a citation for speeding and defense counsel points out that the body camera footage does not show Trooper Stegall's radar gun reflecting the alleged 93 miles-per-hour speed of defendant's vehicle. Next, defendant argues that the detention was unreasonably long in duration, asserting that the traffic stop was prolonged beyond the time necessary to complete the traffic stop, i.e., to verify that defendant's license and insurance information were valid and to verify that no active warrants existed for defendant's arrest.

The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. A defendant may move to suppress any evidence from use at trial on the basis that it was unconstitutionally obtained. La. Code Crim. Pro. art. 703(A). A search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the State can affirmatively show that the warrantless search and seizure was justified by one of the narrowly drawn exceptions to the warrant requirement. *See* La. Code Crim. Pro. art. 703(D); *State v. Surtain*, 09-1835 (La. 3/16/10), 31 So.3d 1037, 1043. The trial court's ruling on the matter must be afforded great weight and will not be set aside unless there is an abuse of discretion. *State v. Thompson*, 11-0915 (La. 5/8/12), 93 So.3d 553, 563; *State v. Wells*, 08-2262 (La. 7/6/10), 45 So.3d 577, 581. When a trial court makes findings of fact based on the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. *Thompson*, 93 So.3d at 563; *State v. Carter*, 20-01193 (La. 1/26/21), 309 So.3d 333, 336 (quotations omitted).

As a general matter, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *State v. Carter*, 309 So.3d at 336–37, quoting *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Although they may serve as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. *Id*., citing *State v. Waters*, 00-0356 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam).

Concerning the duration of a valid traffic stop, the Louisiana Supreme Court has recently stated:

> Louisiana Code of Criminal Procedure article 215.1(D) provides that in conducting a traffic stop "an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation,

absent reasonable suspicion of additional criminal activity." During the stop, the officer has the right to conduct a routine license and registration check and, while doing so, may engage in conversation with the driver and any passenger. *See State v. Lopez,* 2000-0562, p. 3 (La. 10/30/00), 772 So. 2d 90, 92-93 (*per curiam*). If the officer develops reasonable suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). In determining whether the officer has a reasonable suspicion of some separate illegal activity that justifies further detention, the totality of the circumstances must be taken into account. *State v. Kalie,* 1996-2650, p. 3 (La. 9/19/97), 699 So. 2d 879, 881(per curiam).

*State v. Carter*, 20-01193 (La. 1/26/21), 309 So.3d 333, 336-37.

Louisiana and federal jurisprudence recognize that traffic stops are "especially fraught with danger to police officers," so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely. *Rodriguez v. United States*, 575 U.S. 348, 356, 135 S. Ct. 1609, 1616, 191 L. Ed. 2d 492 (2015), quoting *Arizona v. Johnson*, 555 U.S. 323, 330, 129 S.Ct. 781, 172 L. Ed. 2d 694 (2009). An officer has the authority to order the driver and other occupants out of the vehicle for officer safety. *State v. Duhe*, 12-2677 (La. 12/10/13), 130 So.3d 880, 886, citing *State v. Landry*, 588 So.2d 345, 347 (La. 1991) (police may order passengers to exit a car in a routine traffic stop for reasons of the officers' safety); *see also Maryland v. Wilson*, 519 U.S. 408, 413, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997) (when a vehicle is stopped, even for a traffic violation, officers may lawfully order its passengers to exit the vehicle).

Concerning the subsequent search of the vehicle, Louisiana courts have consistently held that the odor of marijuana provides an officer with probable cause to conduct warrantless searches of vehicles. *State v. Landor*, 20-0336 (La. App. 1 Cir. 2/19/21), 318 So.3d 225, 229, citing *State v. Cooks*, 12-237 (La. App. 5 Cir. 1/30/13), 108 So.3d 1257, 1268-70, *writ denied*, 13-0454 (La. 9/20/13), 123 So.3d 164; *State v. Lewis*, 07-1183 (La. App. 3 Cir. 4/2/08), 980 So.2d 251; *State v. Waters*, 00-0356 (La. 3/12/01), 780 So.2d 1053, 1058 *(per curiam); see also State v. Allen*, 10-1016 (La. 5/7/10), 55 So.3d 756 (per curiam); *State v. Turner*, 12-855 (La. App. 5 Cir. 5/16/13), 118 So.3d 1186, 1193.

This Court recently explained:

In *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (per curiam), the United States Supreme Court held that if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle. In *Maryland v. Dyson*, 527 U.S. 465, 466–67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (*per curiam*), the Supreme Court explained that the "automobile" exception has no separate exigency requirement. This Court has also recognized that the "automobile" exception does not have an independent exigency requirement, and if probable cause exists for the search of the vehicle that is sufficient. The exigency is supplied by the inherent mobility of the vehicle and the citizen's lesser expectation of privacy. *State v.*

5

*Mitchell*, 10-334 (La. App. 5 Cir. 10/26/10), 52 So.3d 155, 160 (citing *[State v.] Joseph*, [02-717] [ (La. App. 5 Cir. 6/27/03),] 850 So.2d [1049,] at 1054).

In addition, the Louisiana Supreme Court has recognized that there is no constitutional distinction between seizing and holding a car before presenting the probable cause issue to a magistrate and immediately searching the vehicle without a warrant. *Mitchell*, *supra*; *Joseph*, *supra*. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. *State v. Tatum*, 466 So.2d 29, 31 (La. 1985).

Probable cause means "a fair probability that contraband ... will be found." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Mitchell*, *supra*. Whether probable cause exists must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. *State v. Jones*, 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 317.

Additionally, courts, including this Court, have consistently held that the odor of marijuana provided the officers with sufficient probable cause to conduct warrantless searches of vehicles. *State v. Turner*, 12-855 (La. App. 5 Cir. 5/16/13), 118 So.3d 1186, 1193; *State v. Allen*, 10-1016 (La. 5/7/10), 55 So.3d 756 (*per curiam*); *Mitchell*, *supra*.

*State v. Lacrosse*, 19-599 (La. App. 5 Cir. 1/7/20), *reh'g denied* (3/9/20), --- So.3d---, 2020 WL 88838, quoting *State v. Brown*, 17-420 (La. App. 5 Cir. 2/21/18), 239 So.3d 455, 461-62, *writ denied*, 18-480 (La. 1/18/19), 262 So.3d 281.

At the suppression hearing, Trooper Stegall testified that her radar reflected defendant was traveling 93 miles-per-hour in a 60 miles-per-hour speed zone. The video footage introduced into evidence reflects Trooper Stegall informing defendant of the reason for the stop, and defendant appears to acknowledge that he had been speeding because he was in a hurry to get home. The fact that an officer does not issue a traffic citation is irrelevant to the constitutionality of the stop. *State v. Williams*, 13-732 (La. App. 5 Cir. 3/26/14), 138 So. 3d 727, 732. We find that the initial traffic stop was lawful based on defendant's traffic violation of traveling 93 miles-per-hour in a 60 miles-per-hour speed zone.

Trooper Stegall testified at the suppression hearing that defendant's behavior became "abnormal" and "nervous" when questioned concerning his travel. She further testified that he gave inconsistent and "vague" responses, stating first that he was traveling from Kenner, then Baton Rouge, and then Texas, which gave her reasonable suspicion to enlarge the scope of her investigation. *See State v. Lopez*, 00-0562 (La. 10/30/00), 772 So.2d 90, 93. However, Trooper Stegall additionally testified that, based on defendant's nervous demeanor, she felt it necessary and appropriate to detain the other occupants in the vehicle for her safety while she continued her investigation and completed the stop. She testified that she was uncomfortable, as a woman of a small stature, handling three occupants of a vehicle during a traffic stop in the dark at 2:00 a.m., so she requested backup to detain the occupants. In assisting the female passenger in exiting the vehicle, Trooper Stegall testified that she immediately smelled "fresh marijuana" coming

from the vehicle. Once Trooper Stegall smelled the presence of fresh marijuana in the vehicle during the lawful stop, the officers had probable cause to search the vehicle.

The trial judge, upon considering the video evidence and the testimony of the investigating officer, found Trooper Stegall's testimony credible. When a trial court makes findings of fact based on the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. *State v. Carter*, 309 So.3d at 336. Upon review of the evidence and testimony submitted in connection with the motion to suppress, and considering the jurisprudence interpreting La. C.Cr.P. art. 215, we cannot say that the trial judge abused her discretion in denying defendant's motion to suppress. This writ is denied.

**<u>WRIT DENIED</u>**

7

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 6, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-K-232**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
THOMAS J. BUTLER (RESPONDENT)          C. GARY WAINWRIGHT (RELATOR)

**MAILED**
NO ATTORNEYS WERE MAILED