JOHNSON, J.
hln this appeal, Defendant seeks review of his convictions, claiming there was insufficient evidence to convict him. For the reasons that follow, we affirm Defendant’s convictions. ■
On July 10, 2015, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Otis D. Washington, with two counts of possession of a firearm by a convicted felon in violation of La. R.S. 14:95,1 (counts one and two); aggravated assault with a firearm in violation of La. R.S. 14:37.4 (count three); and aggravated criminal damage to property in violation of La. R.S. 14:55 (count four). Defendant pled not guilty and proceeded to trial on April 25, 2016. After a two-day trial, a 12-person jury found Defendant guilty as charged on all four counts. Two days later, the State filed a multiple bill of information as to count four, alleging Defendant to be a third felony offender based on a 2014 predicate conviction for unauthorized use of a movable and a 2010 predicate conviction for simple robbery.[1]
On May 2, 2016, the trial court sentenced Defendant to 20 years at hard labor without benefit of parole, probation or suspension of sentence and a $5,000 fine each on counts one and two; 10 years at hard labor and a $5,000 fíne on count three; and 15 years at hard labor and a $5,000 fine on count four. The trial court ordered the *1223 sentences to run .concurrently with each other.
Defendant initially denied the allegations in the multiple bill, but subsequently stipulated to his status as a third felony offender at a multiple bill hearing on May 19, 2016. The trial court vacated Defendant’s original .sentence on count four and imposed an enhanced sentence under the multiple offender statute |Pof 20. years at hard labor without benefit of probation or suspension of sentence, to run concurrently with Defendant’s other sentences. -

FACTS

Sometime between 9:00 a.m. and 10:00 a.m. on April 28, 2015, the victim, David Quazel Roberts, and his friend, Cassandra,[2] wént to get breakfast at Duncan’s, a corner store which is located down the street from Defendant’s mother’s house on Warren Street in Kenner. As they were leaving the store, Mr. Roberts heard Defendant’s voice.[3] Mr. Roberts could not clearly see Defendant because he was not wearing his glasses. When Mr. Roberts asked Cassandra who it was, Cassandra stated that it was Defendant. According to Mr. Roberts,' Defendant was holding a gun, looked like he was crying “like somebody had made him mad,” and was “talking and saying a bunch of yackking [sic] what he was going to do,” specifically that he was going to kill Mr.. Roberts.[4] Defendant paced back and forth across the street from the store while Mr. Roberts and Cassandra walked to Mr.. Roberts’ car, a 1997 gold Buick LeSabre.
Mr. Roberts testified that Cassandra told .Defendant not to shoot since she was in the car. Defendant responded to Cassandra with profanity. Mr. Roberts exchanged further profanities with Defendant and led Defendant to believe he was armed, even though he was not. Once Mr. Roberts and Cassandra were in the vehicle, Mr. Roberts started to back up and then hit the accelérator, at which time Defendant started firing. The first shot hit the door of the vehicle, and the second shot hit the window, breaking it. Through the rearview window, Mr. Roberts saw Defendant stop shooting and run towards his mother’s house on Warren Street. |sMr. Roberts then called his mother and asked her to call Defendant’s mother to tell Defendant “to chill.” .
The next day, April 29, 2015, Mr. Roberts was stopped at a red light on a two-lane road[5] in Jefferson Parish when a red Suburban pulled alongside of him. Mr. Roberts saw Defendant, who was armed with a gun, hanging out of the window and waving. Mr. Roberts also saw several other people in the vehicle, all of whom were *1224 armed with guns. Fearing for his life, Mr. Roberts ran the red light.
Later that night, at approximately 11:20 p.m., Mr. Roberts called 9-1-1 from a parking lot near Zephyrs Stadium in Me-tairie to report the two incidents. Officer Danny Julian with the Jefferson Parish Sheriffs Office responded to the call and met with Mr. Roberts and his mother in the Zephyrs Stadium parking lot. Officer Julian testified that Mr. Roberts reported that Defendant, along with several males, drove up on the side of him, while he was sitting in his vehicle at a red light, and pointed an assault rifle at him. Mr. Roberts also reported an incident that occurred in Kenner where shots were fired at him while he was inside his vehicle. Officer Julian observed that Mr. Roberts’ vehicle had a bullet hole and shattered windows. Officer Julian described Mr. Roberts’ demeanor as very afraid and nervous. He took Mr. Roberts’ statement about the first reported incident and contacted the Kenner Police Department regarding the second reported incident since it occurred in Kenner.
Officer Joseph Scamardo with the Ken-ner Police Department responded to the Zephyrs Stadium parking lot on April 30, 2015, at 12:40 a.m. He took Mr. Roberts to the Kenner Police complex where he took Mr. Roberts’ statement and crime scene took photos of Mr. Roberts’ vehicle, which had several bullet holes and two shattered windows. No projectiles were located in the vehicle. Officer 14Scamardo stated that Mr. Roberts, via his cellphone, provided a photograph of Defendant obtained from Facebook. Mr. Roberts indicated that the handgun Defendant was brandishing in the Facebook photograph was the same handgun he observed Defendant use in the shooting incident.
After taking Mr. Roberts’ statement, Officer Scamardo went to Duncan’s to search the area in an attempt to locate shell casings or other stray projectiles. Officer Sca-mardo testified that he was unable to find any evidence, there was no available surveillance footage of the area, and no 9-1-1 calls were placed following the shots. Nonetheless, Officer Scamardo obtained an arrest warrant for Defendant.
Defendant was subsequently arrested on May 7, 2015, at his girlfriend’s apartment in Metairie by the United States Marshall’s Fugitive Task Force. At the time of his arrest, Defendant did not have any firearms on his person and no firearms were collected from the apartment in the arresting officer’s presence.
In his defense, Defendant presented the sole testimony of his employer, who testified that Defendant worked on both April 28th and 29th from approximately 3:00 p.m. until 10:00 p.m. Defendant’s employer did not know Defendant’s whereabouts before or after his shifts.

ISSUE

In his sole assignment of error, Defendant challenges the sufficiency of the evidence. Specifically, he argues that the State failed to prove the existence and use of a firearm, an essential element of each offense. He contends that no firearms, projectiles, casings, or ammunition were recovered at the scene of the crimes or at his girlfriend’s residence. Defendant argues that although the Facebook photographs were suggestive of guilt, they were not properly authenticated to prove that the object depicted was “in fact” a firearm. He further | ¡¡asserts that there were no witnesses to testify to the incident besides the uncorroborated testimony of the victim himself.

LAW & ANALYSIS

In reviewing the sufficiency of the evidence, an appellate court must determine whether, after viewing the evi *1225 dence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record, and determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Ohlsson, 12-708 (La.App. 5 Cir. 4/24/13), 115 So.3d 54, 60, writ denied, 13-1583 (La. 1/17/14); 130 So.3d 343.
Defendant was convicted of two counts of possession of a firearm by a convicted felon, one count of aggravated assault with a firearm, and one count of aggravated criminal damage to property. On appeal, he argues the State failed to prove an essential element of each offense, namely the existence and use of a firearm.
The crime of possession of a firearm by a convicted felon prohibits “any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony.. .to possess a firearm or carry a concealed weapon.” La. R.S. 14:95.1(A). A “firearm” is defined in La. R.S. 14:95.1(D) as “any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.”
[^Additionally, aggravated assault with a firearm is defined in La. R.S. 14:37.4 as “an assault committed with a firearm.” For purposes of the offense, a firearm is defined as “an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.” La. R.S. 14:37.4(B). Assault is “an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.” La. R.S. 14:36. And, a battery is “the intentional use of force of violence upon the person of another.” La. R.S. 14:33,
Also, contrary to Defendant’s contention that all of the charged offenses required the existence or use of a firearm, aggravated criminal damage to property does not require the existence or use of a firearm. Rather, aggravated criminal damage to property “is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.”
The record shows that the victim testified that on two separate occasions he saw Defendant with a gun. In the first incident outside of Duncan’s, the victim testified that Defendant “pulled his pistol out” and that it had a “long clip.” The victim was later shown a photograph of Defendant holding a gun, and the victim identified the gun as the one Defendant had when he shot at the victim. The victim explained that Defendant fired his gun and struck his car, leaving a bullet hole in the car and shattering the windows. The responding police officers both testified that the victim’s car had a bullet hole in it and that its windows were shattered.
The victim also testified that Defendant had a gun in the second incident when Defendant pulled alongside his car. In his statement to the police, the victim specifically identified Defendant’s gun as an assault rifle.
Additionally, the State presented evidence of two jailhouse phone calls placed by Defendant the day after his arrest. In the first jailhouse phone call, Defendant stated:
*1226 [7Man tell her to go at dude with a stack and tell that ni**a to drop the charges, man, ya heard me. B*tch ass ni**a out his fucking mind...yea, man, say, make, sure you stay on that sh*t, you heard me? can’t let that man (inaudible) I’m the shooter man, you heard me
[[Image here]]
Yea, man, you heard me. F*ck around and whack that boy when I get out of here man, (inaudible)
[[Image here]]
Yea,, cuz cuz he had ratted, at first though, .you .heard me, you know what I’m saying. Say man get that ni**a to um, man you heard me, drop the charges, tell her ... Make a ni**a sign an .affidavit or something you heard me ... Cuz F*ck I already for the I already paid for the window you heard me
[[Image here]]
... I’m taking about Quazell man, you heard me? ... man the man, never paid the people that’s why the f*ck I’m in here. [Emphasis added.]
In the second jailhouse phone call, Defendant stated:
[T]hem batches just came in here, I gotta see the judge, them b*tches just came in here. Picture them batches said aggravated assault, aggravated criminal damage and felony with a firearm
[[Image here]]
where the criminal damage come in at? where they felony with a firearm? them b*tches ain’t got no firearm on me, you heard me. See what I’m saying?
***
Bruh you gotta make moves bruh. Don’t make no moves and I don’t come .out there.
***
Man Quazelh ... he the main character. The ■ people ain’t going to move off. ..Look, the people ain’t going to move off nobody else word but his[.]
Despite the fact no firearms, projectiles, casings, or ammunition were discovered during the investigation, we find the above evidence sufficient to show that Defendant was in possession of a firearm on two separate occasions, committed aggravated assault with a firearm, and committed aggravated criminal damage to property.
| sThe credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Bonilla, 15-529 (La.App. 5 Cir. 2/24/16); 186 So.3d 1242, 1256, writ denied, 16-567 (La. 5/2/16); 206 So.3d 881, cert. denied, — U.S. -, 137 S.Ct. 239, 196 L.Ed.2d 183 (2016). It is not the function of the appellate court to second guess the credibility of witnesses as determined by the trier of fact absent impingement on the fundamental due process of law. Id. Absent internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 11-12 (La.App. 5 Cir. 12/29/11); 87 So.3d 881, 893, writ denied, 12-279 (La. 6/15/12); 90 So.3d 1059.
We note that the mere fact that the State was unable to retrieve and produce the gun does not render the evidence insufficient to find Defendant guilty of possession of a firearm by a convicted felon.[6] See State v. Gilliam, 14-228 (La.App. 3 Cir. 10/1/14); 149 So.3d 354, 359. The jury clearly believed the victim’s testimony that Defendant possessed a gun on two *1227 occasions and that Defendant fired a gun on one of those occasions, striking and damaging the victim’s car. The physical evidence, namely the photograph of the victim’s car showing a bullet hole and shattered windows, corroborated the victim’s testimony. Additionally, Defendant admitted the day after his. arrest in a jailhouse phone call that he was the shooter. Thus, regardless of whether a firearm was recovered, the victim’s testimony, the Defendant’s statement, and the physical evidence sufficiently show that Defendant possessed an instrument capable of firing ammunition under La. R.S. 14:95.1 and propelling bullets under La. R.S. 14:37.4.
IsViewing the evidence in a light.most favorable to the State, we find that a rational trier of fact could have concluded that Defendant possessed a firearm on two separate occasions and used a firearm to commit aggravated assault.
Although Defendant does not challenge the sufficiency of the evidence regarding any other element of the offenses for which he was convicted, We note the record sufficiently proves that Defendant intentionally placed the victim in reasonable apprehension of receiving a battery for purposes of aggravated assault. Defendant fired several shots at' the victim while he was in his car. Additionally, the victim testified that Defendant drove up alongside him armed with an assault rifle the day after shooting at him and after threatening to kill him.
We also find the evidence sufficiently proved aggravated criminal damage to property. The victim testified Defendant fired several shots at him while he was in his vehicle, striking the car and shattering the windows. Photographs of the victim’s car show a bullet hole and shattered windows. This is sufficient to show that the damage was inflicted when it was foreseeable that human life might be endangered. See State v. Bradstreet, 16-80 (La.App. 5 Cir. 6/30/16); 196 So.3d 876, 886-87, where this Court found sufficient evidence to support the defendant’s conviction for. aggravated criminal damage to property where photographs reflected multiple bullet holes to a vehicle parked in the,driveway at the scene of the crime.
Accordingly, we find the evidence presented sufficiently supports all four of Defendant’s convictions.

ERRORS PATENT

We reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920 and find one error .that requires correction.
First, contrary to the sentencing transcript, the commitment fails to show that counts two, three,' and four were to be served at hard labor. While hard labor mandatory for count two (possession of a firearm by a convicted felon) under La. R.S. 14:95.1, the imposition of a sentence with hard labor is discretionary under counts three (aggravated assault with a firearm) and four (aggravated criminal damage to property). The commitment also fails to indicate that a fine of $5,000 was imposed on each count three and four. Under La. R.S. 14:37.4 (aggravated assault with a firearm) and La. R.S. 14:55 (aggravated criminal damage to property), the imposition of a fine is discretionary.’
When there is a discrepancy between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732 (La. 1983). Accordingly, we find it necessary to remand the matter for correction of the commitment. While we recognize that Defendant’s original sentence as to count four was vacated whén he was resentenced as a multiple offender, we nonetheless order the trial court to correct the commitment in its entirety to ensure an accurate record.
*1228 Second, there is no corresponding count for the listed offense date “[o]n or between 04/28/2015 and 04/29/2015” on the uniform commitment order. It appears this listed offense date corresponds to count three (aggravated assault with a firearm), as indicated in the amended bill of information. Additionally, the uniform commitment order fails to reflect the $5,000 fine on each of the four counts. Thus, on remand, it is ordered that the uniform commitment order be corrected to reflect that the above offense date pertains to count three and to include the $5,000 fine on each count.
Upon correction of the original commitment and the original uniform commitment order, the Clerk of Court for the 24th Judicial District Court is ordered to transmit the corrected commitments to the officer in charge of the institution to which Defendant has been sentenced as well as to the Legal Department for the Louisiana Department of Public Safety and Corrections. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12); 106 So.3d 1136, 1142.
| ^DECREE
For the above reasons, we find the presented evidence sufficiently supports Defendant’s convictions for two counts of possession of a firearm by a convicted felon, aggravated assault with a firearm, and aggravated criminal damage to property. Accordingly, Defendant’s convictions are affirmed. We remand the matter for correction of the original commitment and uniform commitment order as indicated above.
CONVICTIONS AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENTS

. We note that the multiple offender bill was filed before Defendant was sentenced. Under La, R.S. 15:529.1(D)(1)(a), a multiple bill may be filed “at any time, either after conviction or sentence.”

. Cassandra did not testify at trial. The victim stated that Cassandra refused to go to the police because she believed Defendant was crazy and she had outstanding warrants. He further stated that he did not give her name to the police.

. Mr. Roberts testified that he and Defendant - - grew up together and were very close. He also testified that his mother and Defendant’s mother, Ms. Billy, were close.

. Mr. Roberts testified that approximately one month earlier, he and Defendant had an argument during which Defendant accused Mr. Roberts and his brother of taking a gun from him. Mr. Roberts denied the accusation at the time, but Defendant "got hot headed” and said he was going to kill him. That was the .last time Mr. Roberts saw Defendant prior to the April 28, 2015 incident.

.In his statement to the police, Mr. Roberts indicated he was at the intersection .of Wilker Neal and Jefferson Highway when the incident occurred. At trial, Mr. Roberts stated, "We was at the red light, I think it was Filmore whatever it was.” We note that Wilker Neal and Filmore are in the same area. They both intersect Jefferson Highway and are only two streets apart.

. Although not challenged by Defendant,- we note that the State presented a certified conviction packet showing Defendant pled- guilty to simple robbery in 2010, which sufficiently established Defendant was a convicted felon for purposes of La. R.S. 14:95.1.