STATE OF LOUISIANA

VERSUS

LONG T. NGUYEN

NO. 22-KA-286

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-5640, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

February 27, 2023

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Hans J. Liljeberg

**AFFIRMED**
    **HJL**
    **MEJ**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA

    Honorable Paul D. Connick, Jr.

    Thomas J. Butler

    Anne M. Wallis

    Gabrielle Hosli

    Michael G. Morales

COUNSEL FOR DEFENDANT/APPELLANT,
LONG T. NGUYEN

    Jane L. Beebe

**LILJEBERG, J.**

Defendant, Long. T. Nguyen, appeals his convictions and sentences for one count of money laundering in the amount of $46,000.00, and two counts of conspiracy to possess with the intent to distribute marijuana greater than 2.5 pounds. For reasons stated more fully below, we affirm defendant's convictions and sentences.

**PROCEDURAL BACKGROUND**

On March 14, 2022, a 12-person jury found defendant guilty of money laundering in the amount of $46,000.00 in violation of La. R.S. 14:230(E)(3), and two counts of conspiracy to possess with the intent to distribute marijuana greater than 2.5 pounds in violation of La. R.S. 40:979 and La. R.S. 40:966(A). On April 1, 2022, defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal arguing that the State failed to introduce evidence to prove he participated in the money laundering or the conspiracy to possess with the intent to distribute marijuana. On April 5, 2022, the trial court sentenced defendant to concurrent sentences of eighteen years for the money laundering conviction, and eight years on each count for possession with the intent to distribute marijuana greater than 2.5 pounds.

Immediately after sentencing defendant, the trial court denied the motions for new trial and post-verdict judgment of acquittal.[1] That same day, defendant filed a motion to reconsider sentence and a motion for appeal. The trial court granted the motion for appeal on April 8, 2022, and denied the motion to reconsider sentence on April 25, 2022. Defendant now appeals his convictions by

---

[1] Generally, trial courts must dispose of a motion for new trial and motion for post-verdict judgment of acquittal prior to sentencing. *See* La. C.Cr.P. arts. 853(A) and 821(A). However, as discussed more fully below in the Errors Patent section, we find that the trial court's failure to rule on the motions for new trial and post-verdict judgment of acquittal prior to sentencing was harmless error considering the particular circumstances at issue in this case.

challenging the sufficiency of the evidence, as well as the denial of his motions for new trial and post-verdict judgment of acquittal raising the same issue.

**THE EVIDENCE**

The following evidence was developed at trial. Agent Eric Hymel with the Jefferson Parish Sheriff's Office (JPSO) received information from a confidential informant (CI) regarding the involvement of defendant and his wife, Bich Nguyen, with narcotics trafficking, particularly shipments of marijuana from California. The CI also identified Man Danh and Neil Hoang as individuals involved with distributing the marijuana. Based on this information, in June 2019, Agent Hymel obtained a warrant for GPS tracking information on Bich Nguyen's phone and determined that she and defendant were travelling between California and Jefferson Parish.

Using the GPS tracking information, Agent Hymel set up surveillance of a residence at 113 Burmaster Street in Belle Chasse, Louisiana on June 25, 2019. At approximately 9:45 p.m., he observed defendant and his wife arrive at the residence in a burgundy minivan. When defendant exited the vehicle, he was carrying a reflective "yellowish-gold looking package" the size of a legal envelope. They knocked on the door and were greeted by Neil Hoang, whom Agent Hymel recognized as another person of interest identified by the CI. Agent Hymel saw defendant hand Mr. Hoang the package as he entered the residence. Defendant and his wife left the residence around 11:45 p.m. without the gold package.

Agent Hymel then followed the minivan to a duplex at 2218 North Broad in New Orleans. Agent Hymel explained that based on the GPS tracking information, he determined defendant and his wife had been staying at the address on North Broad.[2] The following day, Agent Hymel received new GPS tracking information

---

[2] He discovered at a later time that this was an Airbnb property rented by defendant's wife.

and set up surveillance at around 4:15 p.m. at a residential four-plex located on 3 Heritage Lane in the Algiers area of New Orleans.[3] He observed the same minivan from the night before arrive at the Heritage Lane location at around 5:30 p.m. Defendant and his wife left the residence a short time later, and Agent Hymel followed them to the airport, where they picked up their three teenage children who were arriving from Los Angeles. Agent Hymel then followed the minivan back to the North Broad property, where they retrieved some items before travelling again to the Westbank.

Agent Hymel then observed defendant, who was driving the minivan, commit a traffic violation. Agent Hymel and two other agents, including Agent Elvin Modica, conducted a traffic stop. Agent Hymel asked defendant to identify himself, and defendant provided him with the false name "Hienh." Agent Hymel then asked defendant to step out of the vehicle. Defendant consented to a search of the vehicle, but the agents found nothing of evidentiary value. Defendant's wife, Bich Nguyen, also consented to the search of her purse and Agent Modica found a large quantity of cash totaling approximately $8,000.00. When asked about the money, defendant stated they were going on vacation.

Agent Modica testified that the traffic stop then became a criminal investigation and he advised Bich Nguyen of her *Miranda*[4] rights. Once she indicated that she understood those rights, she consented to a search of her cell phone. Agent Modica found pictures of different types of marijuana, as well as text messages regarding the sales of narcotics, prices and strains, indicating Bich Nguyen's involvement in the distribution of large quantities of marijuana.

All of the occupants of the vehicle were then transported to the detective's bureau. There, defendant was advised of his *Miranda* rights. Defendant told

---

[3] Agent Hymel also discovered at a later time that this was another Airbnb property rented by defendant's wife.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Agent Hymel that he lied about his name during the traffic stop because he was scared. Agent Hymel explained that he attempted to get further information, but defendant requested an attorney. Agent Hymel also advised Bich Nguyen of her *Miranda* rights again. He testified that she "apparently no longer was able to speak English" after the advisal.

During the consensual search of Bich Nguyen's cell phone, agents also found information implicating Man Danh, another individual identified by the CI. Agents were sent to Mr. Danh's residence at 3300 Wall Boulevard, Apartment 2C, to investigate. Agents obtained consent to search the residence where they found narcotics. Mr. Danh and his girlfriend, Lein Troung, were arrested.

Agent Hymel then contacted the New Orleans Police Department (NOPD) for assistance to obtain a search warrant at 2218 North Broad, where defendant and his wife previously stayed. During the search, agents found empty shipping boxes with the name "Andy Tran" on them. Agent Hymel testified that the CI told him that "Andy Tran" was an alias used by defendant to traffic narcotics and conceal his identity. On cross-examination, he admitted that he did not include this particular information obtained from the CI in his police report.

After searching the Broad Street property, Agent Hymel returned to his office and looked through Bich Nguyen's cell phone again. He discovered Airbnb information indicating that she checked out of the residence at 2218 North Broad that day and obtained another Airbnb on Heritage Lane in Algiers. With the assistance of the NOPD, Agent Hymel obtained a warrant for the Heritage Lane location, and agents accessed the property using a key in defendant's possession. There, they found a gold package containing marijuana weighing one or two pounds. Agent Hymel testified that this gold package was the same as the package he observed defendant hand to Neil Hoang at the Burmaster address in Belle Chasse.

Agent Hymel also testified that during their consensual search of Bich Nguyen's cell phone, they found a tracking number that showed a package was to be delivered on June 27, 2019 to "Andy Tran" at the 3300 Wall Boulevard address (Man Danh's address) and determined it would be routed through the UPS office in Harvey. He obtained a search warrant and contacted UPS management to seize the package before it went out for delivery. The package contained approximately eight pounds of marijuana and originated from Garden Grove, California. Agent Hymel explained that the box was not a standard shipping box because it contained a heavier wooden insert. Inside of the wooden insert, he found packages with the same distinct gold packaging as packages previously found at the Heritage Lane and Burmaster locations. Agent Hymel explained that the marijuana was vacuum-sealed and in the gold bags to make it undetectable by a canine.

After Agent Hymel saw the same gold packaging, he contacted Agent Fisher with the Plaquemines Parish Sheriff's Office regarding the Burmaster property where Neil Hoang resided, and Agent Fisher obtained a search warrant for the residence. At trial, Agent Fisher testified regarding photographs of the evidence seized during the search, which included packaged marijuana and money. Agent Fisher testified that they found packaging consistent with larger level distribution networks. They also found gold packaging consistent with the packaging found at the Burmaster and Heritage Lane locations. Mr. Hoang and his wife were arrested following the search.

Agent Hymel also testified about the result of search warrants obtained for Bich Nguyen's cell phones. He found an outgoing text message from her phone that stated, "Hi LG, this is Bich, Andy's wife." He also found photographs of marijuana, photographs of tracking numbers and money orders, as well as a photograph of a shipping label with the name "Andy Tran" above the address, 3300 Wall Boulevard, Apartment C (again Man Danh's address). Agent Hymel

also testified about a message sent by Bich Nguyen from her phone dated June 21, 2019, that provided an email address, andybich02@gmail.com., with a password, "Long 1122."

Agent Hymel explained that he also obtained a search warrant for defendant's cell phone. Agent Hymel read the following text messages sent from and received on defendant's phone indicating that defendant used the alias "Andy Tran": "Andy, someone going to call you for Dee," "Slim. It's Andy. Bro, what's up with my sit? Call back," and "Andy, did you give Dee [sic] brother a hundred dollars to give to me?" Agent Hymel also directed the jury's attention to the following message sent from defendant's phone:

> Hi my name is andy your husband friend. If he call you today can you ask him what can i do for them and can you please ask him to tell the white boy im trying to bail him uot but they ask for alot plus the house because im from cali the white boys form mis that why ask him what should i do please ask him to call e too

In addition to text messages, Agent Hymel found photographs on defendant's phone that showed a package addressed to "Andy Tran" at "2218 North Broad Street." He located a Chime bank information sheet with defendant's name, email address, a phone number, and Mr. Danh's address at 3300 Wall Boulevard. Another photograph reflected the name "Andy Tran" and the address of 2218 North Broad Street, and a screen shot relating to Amazon also contained the address "Andy Tran, 3300 Wall Boulevard, Apartment 2C." Agent Hymel admitted on cross-examination that he did not locate any photographs of or text messages regarding the Bank of America account, tracking numbers, money orders, or marijuana on defendant's phone. He also testified that he was unaware that another individual named Andy Tran pled guilty to distributing marijuana in Jefferson Parish in 2017.

Agent Hymel explained that he also authored search warrants to various banks associated with receipts found in Bich Nguyen's phone and purse. Agents also discovered numerous receipts for tracking numbers, MoneyGram and Western Union money orders in her purse and phone. In addition to the cash described above, a closer examination of the contents of Bich Nguyen's purse revealed that she had money orders dated from May and June of 2019 totaling approximately $46,000.00. Agent Hymel explained that the individual money orders were in amounts that were small enough so that identification would not have to be provided for the transaction. Agent Hymel also found a W-2 form in Bich Nguyen's purse indicating that she only made approximately $13,000.00 for the reported year.

He further testified regarding receipts found in Bich Nguyen's purse for withdrawals and deposits into a Bank of America account in Garden Grove, California, where defendant and his wife have an address. Agent Hymel testified that defendant also had a Bank of America card with Bich Nguyen's name on it in his possession when he was brought to the detective's bureau. Agent Hymel also explained that once he began examining the tracking numbers, he was able to determine that money sent from here corresponded with packages received here.

In addition to this evidence gathered in 2019, agents received information about an additional marijuana shipment in 2021. Detective Gerard Simone with the JPSO testified that on January 8, 2021, the patrol division received a call about a large amount of narcotics shipped in error to 2152 Carol Sue where Julie Doh and Heinh Nguyen resided. The residents were upset and called the police. The box was shipped to Julia Nguyen at 2152 Carol Sue Avenue, Apartment A, in Gretna. Just as with the prior shipment intercepted at the UPS facility, the cardboard box was lined with wood sheets and contained seven individual vacuum-sealed bags of marijuana in gold packaging. The total weight of the marijuana was

approximately seven pounds. The residents consented to a search of their rooms and phones, but nothing linking them to the package was found.

Detective Simone spoke to an assistant investigator on the scene and other investigators involved in the 2019 case. Defendant was incarcerated at that time, and agents decided to listen to and monitor his calls from the jail. Detective Simone searched the jail phone call database and discovered that defendant made over a hundred phone calls to his wife, most of which were in Vietnamese. Detective Simone reached out to Deputy Joe Nguyen for translation assistance, and the deputy was able to translate some of the calls.[5] Detective Simone explained that they found that defendant's wife called him at the jail the night the package had been seized "freaking out saying that they'd been robbed, another one had been stolen. They were -- He was consoling her telling her it's okay, we'll get it back[.]" In some earlier calls, defendant told his wife to access an email address with information to access a storage unit and he provided her with the gate code. In a later call, he believed they were discussing a missing package involved in the incident that occurred on January 8, 2021, at the Carol Sue location. Detective Simone testified that in the jail calls, Bich Nguyen reached out to defendant and took instructions, indicating that they were both involved even though defendant was in jail at the time.[6]

Detective Simone further testified that they continued to monitor defendant's jail calls, but they could not locate the storage unit discussed by defendant and his

---

[5] Deputy Joe Nguyen with JPSO testified that he has spoken Vietnamese his entire life and is Vietnamese. He acknowledged that he is not a certified Vietnamese translator, but that he is often called upon by other officers to assist in translating. Further, prior to Deputy Nguyen's testimony, the State and defendant stipulated that Deputy Nguyen translated the calls from their "raw and natural form," and he did not listen to the audio of the calls after it had been enhanced by the JPSO computer network systems specialist. Further, they stipulated that a tape of enhanced audio was provided to and analyzed by three certified court-approved Vietnamese interpreters, and none of them were able to make a transcription due to large portions of the tape being inaudible, as well as the interpreters saying that the quality of the voices were so difficult to hear that it was very hard to make out complete sentences.

[6] Agent Modica testified that, though the calls were difficult to hear, what they "gathered from this conversation is that there was direction, the direction was coming from Long Nguyen to Bich Nguyen, and it seemed like she was receiving the orders and we knew that she was being directed to a storage unit."

wife. Detective Simone then went to speak to Bich Nguyen at her apartment at 500 Wall Boulevard, Unit 110. Upon approaching the apartment he detected the odor of marijuana. Ms. Nguyen answered the door and initially agreed to speak to the agents but then quickly slammed the door and locked it. She did not respond to any additional knocking and announcing.

Detective Simone testified that he authored and obtained a search warrant for Bich Nguyen's apartment at 500 Wall Boulevard, Unit 110. In searching the apartment, they found 22 pounds of marijuana vacuum-sealed in green metallic wrapping paper. Detective Simone testified that there were numerous boxes with wood lining similar to the ones seized on January 8, 2021, and in 2019. They also found the cut tops of the vacuum-sealed bags labeled with the strain or variety of different kinds of marijuana. They found a vacuum-sealer and digital scale, which Detective Simone stated were used for weighing and packaging narcotics for distribution. They also found a grey tub and a backpack with sealed bags of marijuana, a quantity of cash, marijuana in the freezer and concealed under a bathroom sink, and a box addressed to defendant.[7]

They also located a Life Storage pamphlet with a hand-written sticky note with "541." A Life Storage self-storage unit business was located directly next to Bich Nguyen's apartment complex. Detective Simone determined that the storage unit was rented in early January 2021, and obtained a search warrant for storage Unit 541 at that location. During the search, they found additional bags of vacuum-sealed marijuana wrapped in green metallic paper, unused green metallic paper, additional packing slips, and a large quantity of gold metallic wrapping paper. Wood-lined cardboard boxes, packaging materials, and a suitcase

---

[7] Detective Simone explained that while they were at the Wall Boulevard residence, Thuy Dejaune Pham and Nghia Hoang appeared. Mr. Hoang wore a backpack identical to the one found in the apartment. Detective Simone indicated that marijuana was found in Mr. Hoang's backpack and truck. Packaging slips were also found in his truck.

containing vacuum-sealed marijuana wrapped in green metallic paper were also found.

## LAW AND DISCUSSION

In his assignments of error, defendant argues that the trial court erred in denying his motion for new trial and post-verdict judgment of acquittal because the evidence was insufficient to prove his identity or involvement in the crimes at issue. Defendant argues that the State failed to meet the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Defendant argues that "[t]he only question in this case was who was running the marijuana sales operation and laundering the money." He contends that Bich Nguyen was the perpetrator, and his convictions and sentences should be reversed.

The State avers that it proved not only that defendant was part of the entire scheme to distribute illegal narcotics and launder money, but that defendant profited from the illegal and unlawful activity by money laundering. The State contends that it connected defendant to the name "Andy Tran." The State further argues that defendant was aware of all operations and that between he and his wife, there was a conspiracy and an intent to distribute marijuana. The State concludes that it established all of the elements of money laundering and conspiracy to distribute marijuana.

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So.3d 791, 816, *writ denied*, 21-316 (La. 5/25/21), 316 So.3d 2. In the present case, defendant timely filed such a motion.

The constitutional standard for sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the State proved all of the essential elements of the crime

beyond a reasonable doubt. *Jackson*, *supra*; *State v. Chinchilla*, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1195, *writ denied*, 21-274 (La. 4/27/21), 314 So.3d 838, *cert. denied*, -- U.S. --, 142 S.Ct. 296, 211 L.Ed.2d 138 (2021). This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. *State v. Clifton*, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 702. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. *State v. Hayman*, 20-323 (La. App. 5 Cir. 4/28/21), 347 So.3d 1030, 1040. Further, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. As a result, under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *State v. Ordonez*, 16-619 (La. App. 5 Cir. 3/15/17), 215 So.3d 473, 477.

In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the perpetrator's identity. When the key issue is identification, the State must negate any reasonable probability of misidentification in order to carry its burden of proof. *State v. Walker*, 10-536 (La. App. 5 Cir. 5/10/11), 66 So.3d 486, 491, *writ denied*, 11-1103 (La. 11/23/11), 76 So.3d 1149. A positive identification by only one witness is sufficient to support a conviction. *State v. Harrell*, 19-371 (La. App. 5 Cir. 7/8/20), 299 So.3d 1274, 1281.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Lloyd*, 21-645 (La. App. 5 Cir. 8/24/22), 348 So.3d 222, 231, *writ denied*, 22-1354 (La. 11/22/22), 350 So.3d 499. Where circumstantial evidence forms the basis of a conviction, the circumstances must be so clearly proven that they point not merely to the possibility or probability of guilt, but to the moral certainty of guilt. *State v. Nelson*, 14-252 (La. App. 5 Cir. 3/11/15), 169 So.3d 493, 501, *writ denied*, 15-685 (La. 2/26/16), 187 So.3d 468. The rule as to circumstantial evidence is "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *Id.* (citing La. R.S. 15:438). This is not a separate test from the *Jackson* standard but rather provides a helpful basis for determining the existence of reasonable doubt. *State v. Manuel*, 20-172 (La. App. 5 Cir. 6/2/21), 325 So.3d 513, 539, *writ denied*, 21-926 (La. 10/12/21), 325 So.3d 1071.

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Bartholomew*, 18-670 (La. App. 5 Cir. 10/23/19), 282 So.3d 374, 382. Absent internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Washington*, 16-732 (La. App. 5 Cir. 4/12/17), 219 So.3d 1221, 1226. It is not this Court's function to assess the witnesses' credibility or re-weigh the evidence. *State v. Lane*, 20-137 (La. App. 5 Cir. 12/23/20), 309 So.3d 886, 906, *writ denied*, 21-100 (La. 4/27/21), 314 So.3d 836.

Defendant was convicted of one count of money laundering between $20,000.00 and $99,999.00 in violation of La. R.S. 14:230(E)(3) and two counts of

conspiracy to possess with intent to distribute marijuana greater than 2.5 pounds in violation of La. R.S. 40:979 and La. R.S. 40:966(A).

La. R.S. 14:230 provides in part:

B. It is unlawful for any person knowingly to do any of the following:

(1) Conduct, supervise, or facilitate a financial transaction involving proceeds known to be derived from criminal activity, when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of proceeds known to be derived from such violation or to avoid a transaction reporting requirement under state or federal law.

(2) Give, sell, transfer, trade, invest, conceal, transport, maintain an interest in, or otherwise make available anything of value known to be for the purpose of committing or furthering the commission of any criminal activity.

(3) Direct, plan, organize, initiate, finance, manage, supervise, or facilitate the transportation or transfer of proceeds known to be derived from any violation of criminal activity.

(4) Receive or acquire proceeds derived from any violation of criminal activity, or knowingly or intentionally engage in any transaction that the person knows involves proceeds from any such violations.

(5) Acquire or maintain an interest in, receive, conceal, possess, transfer, or transport the proceeds of criminal activity.

(6) Invest, expend, or receive, or offer to invest, expend, or receive, the proceeds of criminal activity.

"'Criminal activity' means any offense, including conspiracy and attempt to commit the offense, that is classified as a felony under the laws of this state[.]"  La. R.S. 14:230(A).  La. R.S. 14:2(4) defines a felony as "any crime for which an offender may be sentenced to death or imprisonment at hard labor."

In the instant case, the evidence indicates that the money at issue constituted the proceeds of a criminal activity.  The offense of conspiracy to possess with intent to distribute marijuana greater than 2.5 pounds is punishable by a term of imprisonment at hard labor for up to ten years and a fine.  La. R.S. 40:979 and La. R.S. 40:966(A).  Therefore, the money made from the distribution of marijuana

would be the proceeds of criminal activity. *See State v. Trevino*, 07-870 (La. App. 5 Cir. 5/27/08), 985 So.2d 851, 857-58, *writ denied*, 08-1900 (La. 4/3/09), 6 So.3d 768.

Factors helpful in determining whether an alleged money laundering transaction was designed to conceal the source of the proceeds include: statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on the practices of criminals. *State v. Duhon*, 18-593 (La. App. 1 Cir. 12/28/18), 270 So.3d 597, 612, *writ denied*, 19-124 (La. 5/28/19), 273 So.3d 315.

In addition, the crime of conspiracy to possess with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he or she did so with the specific intent to distribute it. *State v. Cooks*, 12-237 (La. App. 5 Cir. 1/30/13), 108 So.3d 1257, 1265, *writ denied*, 13-454 (La. 9/20/13), 123 So.3d 164. When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the State must prove the amount of the substance and/or manner in which it was carried was inconsistent with personal use. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which gives rise to reasonable inferences of intent to distribute. *Id*.

The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. *State v. Drewery*, 12-236 (La. App. 5 Cir. 1/30/13), 108 So.3d 1246, 1253. A person not in physical possession of the drug is considered to be in constructive possession of the drug, even though the drug is not in his physical custody, when it is under that

person's dominion and control. *State v. Richardson*, 18-717 (La. App. 5 Cir. 9/4/19), 279 So.3d 501, 508-09, *writ denied*, 19-1722 (La. 7/2/20), 297 So.3d 764. The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. *Id.*

Further, the elements of the crime of conspiracy are: (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. *State v. Davis*, 12-512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 77, *writ denied*, 13-1205 (La. 11/22/13), 126 So.3d 479. Proof of a conspiracy may be made by direct or circumstantial evidence. *Id.* The first element of conspiracy requires specific intent, which is defined in La. R.S. 14:10 as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Intent may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Boudoin*, 11-967 (La. App. 5 Cir. 12/27/12), 106 So.3d 1213, 1222, *writ denied*, 13-255 (La. 8/30/13), 120 So.3d 260.

In the instant case, the evidence indicates that the name "Andy Tran" was linked to defendant. Agent Hymel testified that defendant used the name "Andy Tran" to conceal his identity. He indicated that extractions from both defendant's phone and his wife's phone indicated that defendant used that alias and had an email address associated with the alias. Agent Hymel also testified that the informant told him defendant used the alias "Andy Tran."

During the traffic stop, approximately $8,000.00 was found in Bich Nguyen's purse. Photographs and messages on her phone indicated the selling of illegal narcotics and contained tracking numbers. The name "Andy Tran" was included in some of those text messages.

Agent Hymel testified that between May and June of 2019, a total of $46,000.00 was moved by defendant and his wife through various financial institutions in small structured denominations, which he indicated was done so that the money could discreetly be moved without providing identification. Evidence indicated that some Bank of America transactions went to Garden Grove, California, where defendant and his wife have an address.

The police intercepted a package on June 27, 2019. The package had a tracking number on Bich Nguyen's phone, was addressed to "Andy Tran" at 3300 Wall Boulevard, and was sent from Garden Grove, California. The package contained eight pounds of marijuana. That box had the same distinct gold packaging that was found at the Heritage Lane location where defendant and his wife were staying, and that defendant brought into the home in Belle Chasse. Agent Hymel also discovered from examining the evidence that the money sent corresponded to packages received.

A misdelivered package discovered on January 8, 2021, also contained gold cellophane wrapped bundles of seven pounds of marijuana. The box was similar to others in this case. Agent Hymel went to the Heritage Lane location later in the investigation. While the property was rented in Bich Nguyen's name, the agents used a key found in defendant's possession when he was arrested to access the apartment. Agents located one or two pounds of marijuana bundled in gold cellophane wrapper.

Defendant and his wife discussed a missing package and a storage unit in recorded calls between them while he was in jail. Agents gathered from those

conversations that defendant was giving orders to his wife and directing her to the storage unit. Detective Simone indicated that defendant brought up the storage unit first and gave his wife the gate code.

Bich Nguyen's apartment at 500 Wall Boulevard was searched on February 10, 2021. In searching the apartment, officers found 22 pounds of marijuana packaged in a similar manner to that previously seized. There were numerous boxes with wood lining similar to the ones seized on January 8, 2021, and in 2019. Agents found the cut tops of the vacuum-sealed bags labeled with the strain or variety of different kinds of marijuana, a vacuum-sealer, and a digital scale. A box addressed to defendant was found in the apartment.

The storage unit was searched, and they found marijuana and green packaging similar to the packaging observed in Bich Nguyen's apartment, and gold packaging similar to prior seizures. Wood-lined cardboard boxes and a suitcase containing vacuum-sealed marijuana wrapped in green metallic paper were also found.

Considering the foregoing, we find the evidence showed that defendant and his wife worked together to engage in the movement of approximately $46,000.00 through various financial institutions and that that money was the proceeds of their marijuana distribution. Money that was transferred corresponded to packages. The agents recovered eight pounds of marijuana in the intercepted package addressed to "Andy Tran," seven pounds of marijuana in the mistakenly delivered package, one or two pounds at the Heritage Lane apartment, and another 22 pounds at the apartment at 500 Wall Boulevard. Similar distinct packaging was found in all of the packages, two apartments, and the storage unit. The jail calls reflected that defendant worked in concert with his wife.

The jury heard all testimony and viewed all evidence in this matter and found the evidence to be credible. This Court should not second guess credibility

determinations. *See Chinchilla*, *supra*. Accordingly, considering the law and the evidence admitted at trial, we conclude that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient to find that defendant committed the offenses under the standard set forth in *Jackson*. We further find that the judge did not err in denying the motions for post-verdict judgment of acquittal and new trial.

**ERRORS PATENT DISCUSSION**

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920;[8] *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

First, we observe a discrepancy between the transcript and the sentencing minute entry. Although the minute entry reflects that defendant was properly advised of the time period for seeking post-conviction relief pursuant to La. C.Cr.P. art. 930.8, the transcript does not show a proper advisal as to post-conviction relief. Where there is a discrepancy between the transcript and the minute entry, the transcript generally prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983). If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022. Accordingly, we advise defendant by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.

---

[8] La. C.Cr.P. art. 920(2) states that an error patent is "[a]n error that is discoverable by an inspection of the pleadings and proceedings and without inspection of the evidence."

C.Cr.P. arts. 914 or 922. *See State v. Barnett*, 18-254 (La. App. 5 Cir. 4/3/19), 267 So.3d 209, 235.

We further find that the trial court erred by sentencing defendant prior to disposing of his motions for new trial and post-verdict judgment of acquittal. A judgment regarding a motion for post-verdict judgment of acquittal must be filed and disposed of prior to sentencing. See La. C.Cr.P. art. 821(A). Further, La. C.Cr.P. art. 853 provides that "[e]xcept as otherwise provided by this Article, a motion for new trial must be filed and disposed of before sentence." Generally, when a trial court fails to dispose of a motion for new trial or a motion for post-verdict judgment of acquittal prior to sentencing, this Court has determined that the sentence must be vacated and the matter remanded for resentencing. *See, e.g., State v. Williams*, 11-65 (La. App. 5 Cir. 12/13/11), 81 So.3d 908, 909; *State v. Common*, 10-996 (La. App. 5 Cir. 11/15/11), 78 So.3d 237, *writ denied,* 11-2779 (La. 9/28/12), 98 So.3d 825.

However, we find this matter to be distinguishable for several reasons, including the fact that the trial court disposed of defendant's motions immediately after sentencing defendant, defendant waived the 24-hour delay for sentencing required by La. C.Cr.P. art. 873, and defendant does not raise any issues on appeal with respect to his sentence. In *State v. Brooks*, 00-106 (La. App. 5 Cir. 9/26/00), 769 So.2d 1242, 1246, this Court encountered similar circumstances and determined that the trial court's error in ruling on a motion for new trial immediately after sentencing was harmless and did not require remand for resentencing:

> The record further reflects that Brooks' motion for new trial was ruled upon immediately after she had been sentenced. LSA–C.Cr.P. art. 853 provides in pertinent part that "[a] motion for a new trial must be filed and disposed of before sentence." This Court has held that sentencing prior to a ruling on these motions must be set aside and the case remanded for a ruling on the motions and then re-sentencing. In this case, there was a ruling on the motion for new trial after sentencing

> and there is no need to remand for a ruling on that motion. Further, Brooks noted that she had planned on waiving her 24–hour sentencing delay between a ruling on the motion for new trial and sentencing. The timing of the trial court, although incorrect, constitutes harmless error. [Internal citations omitted.]

*See also State v. Nicholas*, 10-866 (La. App. 5 Cir. 5/24/11), 67 So.3d 610, 616-17; *State v. Magee*, 17-1217 (La. App. 1 Cir. 2/27/18), 243 So.3d 151, 165, *writ denied*, 18-509 (La. 2/11/19), 263 So.3d 434; *State v. Thornton*, 18-1013, pp. 7-8 (La. App. 1 Cir. 12/21/18), 2018 WL 6716976.

Just as in *Brooks*, *supra*, we also find that the trial court erred with respect to its timing in denying the motions for new trial and post-verdict judgment of acquittal after sentencing. However, because the trial court ruled on the motions during the same hearing, and defendant waived delays and does not assert any errors on appeal with respect to his sentences, we find the trial court's incorrect timing harmless.

## DECREE

For the reasons stated above, we affirm defendant's convictions and sentences for one count of money laundering in the amount of $46,000.00, and two counts of conspiracy to possess with the intent to distribute marijuana greater than 2.5 pounds.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 27, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-KA-286**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          JANE L. BEEBE (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
GABRIELLE HOSLI (APPELLEE)
MICHAEL G. MORALES (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053